PASQUALE DiCICCO vs. DAVID BERWICK & another.[1]

No. 87-1024.

Suffolk.    May 24, 1988. — May 12, 1989.

Present: ARMSTRONG, KAPLAN, & BROWN, JJ.

*Zoning*, Variance. *Boston. Abuse of Process.*

In an action under G. L. c. 40A, § 17, seeking review of the grant of a
variance by the board of appeal of Boston, the judge correctly annulled
the board's decision where the variance had been granted to remedy
deficiencies in a lot's frontage and area created by a post-zoning division
of a parcel of land into two nonconforming lots, and where the variance
was not warranted by any hardship attributable to the lot's shape, soil
conditions, or topography. [313-315]

A landowner in Boston whose house lot abutted a nonconforming lot and
whose view would be blocked in large part by construction proposed
for the lot had standing as an aggrieved party to challenge in an action
under G. L. c. 40A, § 17, the board of appeal's grant of a variance to
the owner of the nonconforming lot. [315]

Where the record in a civil action did not show the entry of final judgment
disposing of the defendants' counterclaim for abuse of process, their
appeal from a judgment against them on the plaintiff's claim was prema-
ture. [315-316]

CIVIL ACTION commenced in the Superior Court Department
on February 26, 1986.

The case was heard by *George A. Sullivan, Jr., J.,* sitting
under statutory authority.

*F. Robert Houlihan* for the defendants.

*James L. Lamothe, Jr.,* for the plaintiff.

ARMSTRONG, J. In April, 1983, the defendants Berwick and
Nelson purchased a residential property on Union Street in
Brighton, consisting of two adjacent, rectangular lots which

---

[1] Scott Nelson. A stipulation of dismissal was filed in this court as to one
of the original defendants, the board of appeal of Boston.

had been in common ownership since their creation in 1913. Lot 5 has 40 feet of frontage and is 100 feet deep; it is the site of a three-family house of the type, common to the neighborhood, known as a "triple-decker." Lot 6 is vacant land (except for the remains of a garage), has 50 feet of frontage, and is, like lot 5, 100 feet deep. Lot 6 has an extensive outcropping of ledge which would make the construction of a residence substantially more expensive than construction on the level ground that is characteristic of other lots in the neighborhood.

In January, 1985, Berwick and Nelson sold lot 5 and the house, retaining lot 6, on which they now wish to build a structure with three condominium units. For this they sought and were granted by the board of appeal variances from the area requirement applicable to the zoning district (5,000 square feet for a one-dwelling-unit residence and an additional 1,500 square feet for each additional unit) and the side-yard requirement (10 feet). The plaintiff, a rear-yard abutter, sought judicial review under G. L. c. 40A, § 17. The defendants Berwick and Nelson filed a counterclaim alleging abuse of process.

The judge correctly annulled the board's decision. Boston's zoning enabling act, St. 1956, c. 665, § 9, authorizes a variance "where, owing to conditions especially affecting such parcel . . ., but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of such zoning regulation would involve substantial hardship to the appellant, and where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent and purpose of such zoning regulation, but not otherwise." Although the ledge outcropping may be unique to lot 6, the need for a variance arises not from that condition but from the lot's failure to meet the area requirement of the zoning ordinance. Compare *Gordon* v. *Zoning Bd. of Appeals of Lee*, 22 Mass. App. Ct. 343, 350 (1986); *Mitchell* v. *Board of Appeals of Revere*, post, 1119 (1989).

For zoning purposes, lot 6 cannot be considered apart from lot 5. At the time lot 5 was sold, as now, the triple-decker on lot 5, to conform to the zoning ordinance, required 8,000 square feet of area and 50 feet of frontage. Lots 5 and 6

combined had 9,000 square feet of area and 90 feet of frontage. The excess area (1,000 square feet) and frontage (40 feet) were insufficient to support a second house. Berwick and Nelson could not create a second buildable lot by selling off a nonconforming lot containing the dwelling. Conformity to the requirements of the zoning ordinance is achieved in such a case by treating the ostensibly conforming lot as servient to the nonconforming lot to the extent necessary to achieve compliance with the area and frontage requirements of the zoning ordinance at the time of the transfer. See *Vetter* v. *Zoning Bd. of Appeal of Attleboro*, 330 Mass. 628, 630 (1953); *Alley* v. *Building Inspector of Danvers*, 354 Mass. 6, 7-8 (1968); *Raia* v. *Board of Appeals of North Reading*, 4 Mass. App. Ct. 318, 322 (1976). See also *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 11 (1981); *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 804 (1981); *Gordon* v. *Zoning Bd. of Appeals of Lee*, 22 Mass. App. Ct. at 351; *Shafer* v. *Zoning Bd. of Appeals of Scituate*, 24 Mass. App. Ct. 966, 967 (1987). The result is that, for zoning purposes, lot 6 is to be regarded as a lot of 1,000 square feet with 40 feet of frontage. *Paulding* v. *Bruins*, 18 Mass. App. Ct. 707 (1984), upon which the defendants rely, is not in point. That case was decided on the basis that the lot in question was created and held in separate ownership prior to the adoption of a zoning ordinance.

Variances are not normally available to remedy deficiencies in frontage and area. *Warren* v. *Zoning Bd. of Appeals of Amherst*, *supra*. Manifestly this is true under the general Zoning Act, G. L. c. 40A, § 10, which, as revised in 1975, expressly limits variances to situations of hardship resulting from soil conditions, shape, or topography. See *Guiragossian* v. *Board of Appeals of Watertown*, 21 Mass. App. Ct. 111, 116 (1985) (as to frontage); *Shafer* v. *Zoning Bd. of Appeals of Scituate*, *supra* at 967. The categories (shape, soil, conditions, topography), however, seem to reflect practice under the pre-1975 general variance statute, G. L. c. 40A, § 15, as inserted by St. 1954, c. 368, § 2. See cases cited in Healy, Zoning Variance Trials in Massachusetts, 68 Mass. L. Rev. 108, 118 n.75 (1983). The variance provision of Boston's zoning enabling

act, St. 1956, c. 665, § 9, tracks exactly the language of § 15 as adopted in 1954.[2] The cases decided under § 15 are thus relevant to interpreting the scope of the Boston board's authority to grant variances under Boston's special act. We have found no decisions under § 15 in which a frontage or area variance was granted or sustained on judicial review, but we have also found no decision unambiguously ruling out that possibility. The question need not be pursued because, under the *Vetter* and *Alley* cases, it seems clear that a variance is not available in any event to remedy a hardship created by a post-zoning division involving the creation of substandard lots.

Two other points should be mentioned. First, we have considered but find no merit in the contention that the plaintiff, whose house lot abuts lot 6 at the rear, and whose view would be blocked in large part by the construction proposed for lot 6, lacked standing as an aggrieved party. Among the stated purposes of Boston's zoning code are (as the judge found): to prevent overcrowding of land, to lessen congestion in the streets, to avoid undue concentration of population, and to provide adequate light and air. Second, technically the appeal should not have come before us because no final judgment disposing of all claims has been entered. See Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). So far as the record discloses, the counterclaim has not been disposed of. A claim for abuse of process, unlike one for malicious prosecution, does not necessarily collapse with the success of the claim alleged to be abusive. *Quaranto* v. *Silverman*, 345 Mass. 423, 426 (1963). The appeal must therefore be dismissed as premature,

---

[2] In 1958 the Legislature amended the variance provision of the 1954 general zoning enabling act by adding the words "financial or otherwise" after the word "hardship". St. 1958, c. 381. The Boston act was not amended correspondingly. With that exception the Boston and the State-wide variance provisions remained substantially identical until the new general Zoning Act was adopted in 1975. See *Wolfson* v. *Sun Oil Co.*, 357 Mass. 87, 89 n.1 (1970). The new Zoning Act did not repeal the special Boston act. *Emerson College* v. *Boston*, 393 Mass. 303, 306-309 (1984).

but, to save expense to the parties, we have dealt with the legal issues arising on the plaintiff's claim, as they were fully briefed and argued.

*Appeal dismissed. No costs to any party.*