Donohue, J.
This is an appeal brought by plaintiffs Thomas Creasia, Joyce M. Decapua and Donald Crea-sia (collectively “Creasia”) pursuant to M.G.L.c. 40A, §17 against defendants the Milford Zoning Board of Appeals (the “Board”) and Pat Allen Iadarola (“Iadarola”). Plaintiffs challenge the grant of a variance (the “Variance”) pursuant to Section 1.9.1 of Milford *458 Zoning By-Laws in relation to premises at 96 High Street, Milford, Worcester County, Massachusetts. By the Variance, Iadarola was permitted to divide his property (the “Lot”) into two lots, one to contain an existing dwelling and the other to be available for residential construction. Plaintiffs contend that the Board exceeded its jurisdiction in failing to satisfy the statutory prerequisites for granting a variance set forth in M.G.L.c. 40A, §10. After a trial de novo, without jury, and based upon all the credible evidence, this Court makes the following findings of fact and rulings of law.
FINDINGS OF FACT
1. Plaintiffs are the owners as tenants in common of a single family dwelling and lot located at 94 High Street, Milford, Massachusetts.
2. Iadarola owns the Lot at 96 High Street, Milford, Massachusetts, which is adjacent to plaintiffs’ property.
3. The Lot is not squared but is longer than it is wide, with a rear line that cuts at an angle.
4. The north portion of the Lot contains a two-family home which was constructed by Iadarola’s parents in 1929. The Lot is 33,391 square feet.
5. The Lot is located in the Residential B (RB) Zoning District. In that District, the minimum lot size is 15,000 square feet, the minimum frontage is 90 feet and the minimum lot width, at the front yard set-back line, is 100 feet.
6. Many lots in the RB Zoning District portion of the neighborhood have lot area less than the 15,000 square feet minimum. Additionally, several lots in the RB portion have less than the required minimum lot frontage and width.
7. On July 14, 1993, Iadarola petitioned the town of Milford to divide the Lot into two lots: one consisting of 18,319 square feet, containing the existing two-family dwelling and the other consisting of 15,072 square feet for construction of a single-family house.
8. The proposed lots were ten feet short of the minimum street frontage and 20 feet short of the minimum lot width requirement. Both proposed lots fully complied with all other RB zoning and By-Law requirements, including, in particular, minimum lot size area, set-back of the houses from the street, sidelines and rearlines, and maximum building coverage on the lots.
9. The Board granted the Variance under Section 1.9.1 of the Town of Milford By-Laws.[4] The Board found that:
(a) The shape of the Lot, in combination with its excessive size and the location of the existing residence, are circumstances relating to the shape of the Lot which do not affect the Zoning District;
(b) Because of the conditions referred to above, literal enforcement of the By-Law would deny Iadarola any economically viable use of a large portion of the oversized Lot; and
(c)Residential use of two lots larger than the minimum lot size required, in a residential neighborhood, with many lots even smaller, will cause no detriment to the public good and will not derogate from the intent or purpose of the Milford By-Law.
RULINGS OF LAW
Massachusetts General Laws Chapter 40A, Section 17 provides that “Any person aggrieved by the decision of the board of appeals . . . may appeal to . . . the superior court . . .” Under M.G.L.c. 40A, §17, “a trial judge is instructed to annul a board’s decision if he finds it ‘to exceed the authority of [the] board.’ ” DiGiovanni v. Board of Appeals of Rockport, 19 Mass.App.Ct. 339, 349 (1985), quoting Vazza Properties, Inc. v. City Council of Woburn, 1 Mass.App.Ct. 308, 312 (1973).
Massachusetts General Laws Chapter 40A, Section 10 authorizes a local zoning board to grant a variance if it “specifically finds” that:
[OJwing to circumstances relating to the soil conditions, shape, or topography of such land . . . and especially affecting such land . . . but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law.
The three prerequisites to the granting of a variance are conjunctive, not disjunctive, and therefore, “[a] failure to establish any one of them is fatal.” Blackman v. Board of Appeals of Barnstable, 334 Mass. 446, 450 (1956). Thus, a “decision of the board of appeals granting a variance cannot stand unless the board finds that each of the prerequisites does exist.” Barnhart v. Board of Appeals of Scituate, 343 Mass. 455, 457 (1962) (citations omitted).
Creasia asserts that the Board exceeded its jurisdiction in granting the Variance because it did not satisfy the prerequisites set forth in M.G.L.c. 40A, § 10. Creasia further argues that Iadarola’s mere financial hardship is not grounds enough for the grant of a variance. See Kirkwood v. Board of Appeals of Rockport, 17 Mass.App.Ct. 423 (1984) (no hardship where value of land if developed in accord with residential zoning district $40,000 less than the value if for commercial development). This Court does not agree.
This Court finds that the Lot meets all the statutory prerequisites of M.G.L.c. 40A, §10 and the relevant provisions of the Milford By-Law for the following reasons.
*459 A.The Lot is Unique Because of Special Circumstances
The Lot has “significant special characteristics beyond the lack of conformity with zoning requirements.” See Paulding v. Bruins, 18 Mass. App. Ct. 707, 710 (1984). Like the property in Paulding v. Bruins, Iadarola’s Lot is oddly shaped, with a slanting rear line and nonuniform sides, and unlike most lots in the neighborhood. See Paulding, supra at 710 (variance grant upheld where lot “pork chop” shaped, differing from most lots in district). The Lot therefore meets the first requirement for the grant of a variance. See Paulding, supra at 710.
B.A Literal Enforcement of the By-Law Would Be a Substantial Hardship
Hardship is “not being able reasonably to use property for the purposes, or in the manner, allowed by the municipal zoning requirements.” Healy, Massachusetts Zoning Manual at 9-13 (1989). Substantial hardship, financial or otherwise, is found only where under the unique circumstances it is “not economically feasible or likely that the locus would be developed in the future for a use permitted by the zoning ordinance or by-law.” Cavanaugh v. DiFlumera, 9 Mass.App.Ct. 396, 402 (1980).
Such is the case with Iadarola’s hardship, which “relates to the land itself.” See Paulding, supra at 712. The use of 15,072 square feet as additional space for the occupants of the existing house is not a viable economic use of the lot, as the existing house already has 18,319 square feet reserved for it. Additionally, no viable economic past use has been found for the vacant 15,072 square foot area, except .for the proposed use as a separate house lot. Furthermore, many lots in the RB Zoning District portion of the neighborhood have lot area less than the 15,000 square feet minimum and several lots have less than the required minimum lot frontage and width. To deny Iadarola this same leniency would be a substantial hardship. These unique circumstances relating to the Lot therefore satisfy the substantial hardship requirement of M.G.L.c. 40A, §10; Iadarola’s hardship involves more than mere finances. See Cavanaugh supra at 402.
C.Granting the Variance Would Not Cause Substantial Detriment to the Public or Derogate From the Purpose of the By-Law
“(I]n considering whether the use permitted by this variance derogates from the intent and purpose of the zoning by-law . . . the deviation must be substantial, and . . . unless the use significantly detracts from the zoning plan for the district, the local discretionary grant of the variance (all the other statutory elements having been satisfied) must be upheld.” Cavanaugh, supra at 400. In order to uphold a variance, the “overall effect of the proposed use of the locus upon other property within the same district” must be de minimus. See Planning Board of Framingham v. Zoning Board of Appeals of Framingham, 5 Mass.App.Ct. 789, 790 (1977)(rescript).
Here, as many lots in the neighborhood are nonconforming, the overall effect on the public of the deviations from lot frontage and lot width requirements would be truly de minimus, not substantially derogating from the purpose of the by-law. See Chater v. Board of Appeals of Milton, 348 Mass. 237, 246 (1964). The presence of nonconforming lots suggests that relief may be granted without substantial detriment to the public good and without “substantially derogating from intent or purpose of the by-law.” Chater, supra. The Lot thus satisfies the final requirements of M.G.L.c. 40A, §10. See Chater, supra.
Therefore, as the decision of the Board is in all respects supported by substantial evidence and satisfies the requirements of M.G.L.c. 40A, §10 and the zoning by-laws, this court affirms the Board’s grant of the Variance to Iadarola.
ORDER
For the foregoing reasons, it is ORDERED that in Civil Action No. 93-2321C, judgment enter for defendants and that the decision of the Milford Zoning Board of Appeals to grant a variance be AFFIRMED.

Section 1.9.1 of the Town of Milford by-laws states that a variance may be granted when the Board or superior court finds that:
(a) . . . there are circumstances relating to the soil conditions, shape, or topography of the land or structures and especially affecting such land or structures, but not affecting generally the zoning district in which such land or structures are located; (b) a literal enforcement of the provisions of the by-law would involve substantial hardship, financial or otherwise, to the appellant for the variance, and that hardship is caused by the circumstance referred to in (a) above; (c) the grant of the variance will not cause detriment to the public good; and (d) the grant of the variance will neither nullify nor substantially derogate from the intent or purpose of this by-law.